SAFE DEPOSIT AND TRUST COMPANY, Substi-
TUTED TRUSTEE, ET AL.,

*vs.*

EDGAR ELLIS AND ISABELLA ELLIS, HIS WIFE.

---

SAFE DEPOSIT AND TRUST COMPANY, Substi-
TUTED TRUSTEE,

*vs.*

CHARLES WILKENS, JR.

---

CHARLES WILKENS, JR.,

*vs.*

SAFE DEPOSIT AND TRUST COMPANY, TRUSTEE.

*Substitution of Trustee—Authority of Court—Powers of Trustee.*

Though the will named three trustees and provided that, in case of a vacancy, the trustees or trustee for the time being competent to act should have power to appoint a trustee or trustees to supply the vacancy, and that they might increase or decrease the original number of trustees, so as the number be not raised above five or reduced below two, nevertheless the court had power, upon the death of the sole surviving trustee, to appoint a sole trustee to administer the trust, equity not allowing a trust to fail for want of a trustee. p. 337

A power of sale given to trustees, for the purpose of changing investments, is ordinarily presumed to be attached to the office of trustee, so as to vest in a substituted trustee. p. 338

A discretion, vested in the trustee named in the will, whether to pay the whole or merely a part of the income to a beneficiary

under the trust, is exercisable by a substituted trustee, with the approval of the court, but not otherwise, on application by either the trustee, the beneficiary, or those entitled in remainder.

p. 341

*Decided April 6th, 1920.*

Three appeals in one record from the Baltimore City Court. (GORTER, J.).

The causes were argued before BOYD, C. J., BRISCOE, THOMAS, STOCKBRIDGE and ADKINS, JJ.

*Harry N. Baetjer* and *Joseph France,* with whom were *Venable, Baetjer & Howard* on the brief, for the Safe Deposit and Trust Company, Trustee.

*John Hinkley,* for Edgar Ellis and Wife and Charles Wilkens, Jr.

BRISCOE, J., delivered the opinion of the Court.

There are three appeals, in the record now before us, from the Baltimore City Court, and they involve the validity of the appointment of a substituted trustee by the Circuit Court of Baltimore City under the will of William Wilkens, late of Baltimore County, deceased, and the exercise by this trustee of certain powers conferred by the will upon three trustees named therein, the trusteeship being vacant at the date of the appointment of the sole trustee.

The objections to the exercise of the powers by the sole trustee are: first, that the will provides for not less than two trustees and, secondly, that the single trustee was appointed by the Court and not by the perpetuating power given by the will to the trustees to name their successors, the will giving the powers only to trustees so appointed.

Mr. Wilkens, the testator, died on the 12th of July, 1879, leaving a last will and testament, which was duly admitted to probate in the Orphans' Court of Baltimore County, on

August 12th, 1879. By his will, he devised and bequeathed a certain portion of his estate, in trust for his son, Charles Wilkens, for life, with remainder over upon his death. He appointed three trustees in the will and made the following provision for succession in the trusteeship:

"And I do further provide that when and so often as a vacancy shall occur in the said trusteeship, by reason of any of the said trustees or their successors dying (whether in my lifetime or after my death), or being unwilling, incompetent or unfit to act, or being desirous of retiring from the office, the trustees or trustee for the time being competent to act, whether intending to continue in the trust or not, shall have power to nominate and appoint, by deed or other writing, a trustee or trustees to supply the vacancy, and thereupon the said trust property, with all the powers aforesaid, shall vest or be vested in the old, jointly with the new trustee or trustees, or in the new trustees solely, as the case may require. Provided, further, that the trustees or trustee for the time being shall have power to add or decrease from time to time the original number of trustees, so as the number be not raised above five or reduced below two; and it is my wish, and I so direct, that the said trustees shall make report annually to the Circuit Court of Baltimore City or some other court of equity of competent jurisdiction, of their proceedings in execution of the trust hereby reposed in them."

The trustees named in the will or such of their successors as were named or selected to fill vacancies in the manner provided by the will, continued to administer the trusts, under the jurisdiction of the Court, until January 10th, 1919, when Gustav A. Schlens, the surviving trustee, resigned, leaving the trusteeship vacant and the Circuit Court of Baltimore City appointed the appellant trust company as sole trustee to administer the trusts under the will, for the benefit of the testator's son, Charles, for life.

The first appeal, No. 45, is taken by the substituted trustee, appointed by the Court, and by the life tenant, Charles Wilkens, from an order of the Circuit Court of Baltimore City, dated the 7th day of January, 1920, sustaining exceptions to a sale of a lot of ground and improvements belonging to the trust estate held by the trustee and sold by it to the appellee purchasers, with the consent and approval of the life tenant, and in pursuance of the power conferred by the will.

The exceptions to the sale, it will be seen, were filed by the purchasers of the property upon the ground: first, that the will required that there be at all times at least two trustees and that a sole trustee could not act; and secondly, that the power to sell, conferred by the will, did not pass to the substituted trustee appointed by order of Court.

The Circuit Court sustained the exceptions to the ratification of the sale made by the trustee, and held that the power to sell, exchange, lease or accept surrenders of any lands or other property constituting portions of the trust estate devised and bequeathed by the will of William Wilkens, in trust for his son, Charles Wilkens, for life, was by the will given to the trustees therein named, and to such successors of the trustees as might be appointed in the manner provided in the will, and that the powers did not pass to and are not vested in the said Safe Deposit and Trust Company of Baltimore, the sole trustee under the will.

We cannot agree to the conclusion reached by the Court below on this appeal or to the construction given by it to that portion of Mr. Wilkens' will here in question.

We are of opinion that the appointment of the Safe Deposit and Trust Company, as substituted trustee, was a proper and a valid act. At the time of the appointment in this case the trusteeship was entirely vacant and it is a familiar rule in equity that a trust shall not be allowed to fail for the want of a trustee.

The validity of the appointment of a sole substituted trustee under a will providing "there should always be three

trustees" to administer the trusts thereby created has been upheld and sustained by the courts in a number of cases. *Jencks* v. *Safe Deposit & Trust Co.*, 120 Md. 627; *Samuel Ready School* v. *Safe Deposit & Trust Co.*, 121 Md. 515; *Sweet* v. *Schlieman*, 95 App. Div. 266, 88 N. Y. Supp. 916; *Sells* v. *Delgado*, 186 Mass. 25.

In *Lewin on Trusts*, page 663, it is said: "When the power in the will was 'to appoint one or more new trustee or trustees in the room of the trustee or trustees dying' and both trustees die and the donee of the power appointed a single trustee in place of both, the appointment was established."

The power of sale given to the trustees by the testator by the will in this case to sell the property, we think, is a power attached to the office of trustee for the purposes of the trust and not a personal power of special confidence and, therefore, the substituted trustee had the power under the will to sell the property in question.

The power of sale to the trustee as set out in the will is as follows:

> "And I empower the said trustees, during the lifetime of said Charles, with his consent, at any time, to change and vary the investments of the said part or share so devised to them in trust, and to sell or exchange any lands or other property, and the proceeds to reinvest in either real or personal property, without reference to the kind or quality of the original investment, to make leases and accept surrenders; and I declare that the receipts of the said trustees or their successors in the trust, shall exonerate purchasers and others paying moneys to such trustees by virtue of my will, from all liability in respect of the application thereof, and from the propriety or necessity of inquiring as to the regularity of any sale or other transaction made under the trusts or powers of this will; and I direct the said trustees in the choice of investments to select good ground rents or other real estate, first-class mortgages, bonds, or stocks of the State of Maryland, United States stocks, Baltimore

City stocks, or other *life* safe and productive stocks,
investments or securities."

The rule as to the proper construction of similar powers in
a will or deed is thus stated in *Perry on Trusts,* sec. 503,
as supported by authority. "When the power is ministerial
in its nature and one which is usually given to a trustee to
enable him to carry out the trust properly, such as a power
of sale for the purpose of changing investments, the courts
incline to hold that it is attached to the office of trustee and
is intended to continue as long as the trust, however exten-
sive may have been the discretion given." *Safe Deposit &
Trust Co.* v. *Sutro,* 75 Md. 365; *Kennard* v. *Bernard,* 98
Md. 516; *Dodge* v. *Dodge,* 109 Md. 166; *Taylor* v. *Mon-
monier,* 120 Md. 104; *Mercer* v. *Safe Deposit & Tr. Co.,*
91 Md. 102; *Md. Casualty Co.* v. *Safe D. & T. Co.,* 115 Md.
339.

For the reasons stated it is clear that the order of Court
dated the 7th of January, 1920, sustaining the exceptions
to the sale, must be reversed, and the cause remanded, to the
end that the sale may be ratified and confirmed.

The second and third appeals, Nos. 46 and 47, are cross
appeals by the substituted trustee and the remainderman
Charles Wilkens, Jr., from an order of Court, passed on 7th
of January, 1920, construing the provisions of the will as
to the amount of income to be paid the life tenant, and di-
recting the payment of the entire income to the life tenant.

The language of the will as to the discretionary power
conferred upon the original trustees named in the will to
determine the amount of income to be paid the life tenant
is as follows:

"And one other of the said equal parts or shares of
my residuary estate, I devise and bequeath to my
brother, Louis Wilkens, and my friends, Herman H.
Graue and Charles Morton Stewart, upon the trust fol-
lowing, that is to say, in trust and special confidence
during the natural life of my son, Charles Wilkens,

to pay the whole or such part less than the whole, as they, the said trustees, or a majority of them, shall in their discretion from time to time think fit so to apply (but so, however, that such part of said income shall not in any one year be less than one thousand dollars) to the said Charles, without power to the said Charles to alien or anticipate said income or any part thereof, and for such payments thereof his receipts alone shall be sufficient discharges to the said trustees, and any income which shall not be so applied or shall not be otherwise expended by the said trustees for the maintenance or benefit of the said Charles or his family, the said trustees shall invest and accumulate, and such accumulations at any time afterwards may either be applied by the said trustees for the benefit of the said Charles or the maintenance of any family of his in such manner as the said trustees may determine, or be paid to him in such payments as they shall think fit, or else at the discretion of the said trustees, retained and kept as a part of the capital of said trust fund, and such accumulations from income, except in so far as paid, expended or applied by the said trustees as aforesaid, in the lifetime of the said Charles, shall, at his death, constitute and be treated as part of the said capital fund."

In *Perry on Trusts,* sec. 503, it is said: "When the trustee has been given the discretion to determine the amount and times of payment of income to the beneficiary, the courts are somewhat less inclined to hold that the discretion was intended to be attached to the office of trustee," unless it appears from the circumstances that the main purposes of the trust will be defeated by holding that the discretion was a personal confidence in the named trustee.

In *Gambell* v. *Trippe,* 75 Md. 252, this Court held that: "Whenever a power is of a kind that indicates a personal confidence, it must *prima facie* be understood to be confined to the individual to whom it is given, and will not except by express words pass to others to whom by legal transmission

the same character may happen to belong." *Snyder* v. *Safe Deposit & Trust Co.,* 93 Md. 228.

While we are of opinion, from an examination of the will in this case, that the substituted trustee did not become vested with the discretion to determine how much of the income of the trust estate and property, less than the whole thereof, should be paid to the life tenant, yet we think it is clear that the power is one that can be exercised by the substituted trustee, with the approval of the Court, on application of either the trustee, the beneficiary or those entitled in remainder. *Milligan* v. *Pleasants,* 74 Md. 8.

It follows for the reasons stated that, as the Court below held that the right to exercise the discretion conferred upon the original trustees, and to control the income to be paid to the life tenant, did not pass to the substituted trustee and directed that the entire income from the trust estate should be paid to the life tenant, the order so holding must be reversed on both appeals, and the causes remanded, to the end that such further proceedings may be had in accordance with the views expressed herein.

> *Order in No. 45 reversed; Order in Nos. 46 and 47 reversed and causes remanded, the costs to be paid out of the estate.*